(No. 88-CC-0985—■)

GEORGE O. GUY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 19, 1999.*

MANCHIK & ROMAKER (CRAIG L. MANCHIK, of counsel), and LEVIN & PERCONTI, for Claimant.

JIM E. RYAN, Attorney General (EDWARD C. SEWARD III, Assistant Attorney General, of counsel), for Respondent.

## OPINION

RAUCCI, C.J.

This cause comes before the Court after trial before a Commissioner of a tort claim filed by Claimant for damages arising out of Claimant's operation of a motorcycle on September 7, 1987, on Route 20 (Lake Street) in Bartlett, Illinois. Claimant alleges he struck a bump in the roadway causing him to crash resulting in severe injuries to Claimant.

The principal issues are (1) whether the Respondent had actual or constructive notice of a dangerous or unsafe condition; (2) whether the bump in the road was a dangerous or unsafe condition; and (3) whether this condition was the proximate cause of Claimant's injuries.

On September 7, 1987, a warm and sunny day, Claimant was riding his 1985 Yamaha Ventura motorcycle in a westerly direction in the right hand lane on Route 20 in the Village of Bartlett. The Claimant was driving within the speed limit. As he entered a curve, the Claimant hit possibly two, three or four cracks in the road. Claimant's handle bars starting shaking. Claimant then claims he struck a raised bump in the road which caused him to lose control of his motorcycle and crash onto the pavement.

The Claimant and the Respondent stipulated that Claimant's injuries from the collision included but were not limited to a fractured skull, a comminuted fracture of his left clavicle, a fractured fourth left rib, a severe facial laceration and multiple severe abrasions of the shoulder and thorax. Claimant required surgical repair of his lacerations and management of his fractures. Claimant has multiple scars and other permanent injuries as a result of the incident. The parties stipulated that the medical expenses for Claimant totaled $9,140.75. Claimant lost wages as a lineman for Commonwealth Edison from September 8, 1987, to November 17, 1988. He earned approximately $42,000 a year.

Claimant had traveled this road previously and not noticed the alleged defect prior to September 7, 1987. While Claimant recalls riding over crevices or splits in the road which looked like cracks, he does not recall the bump. Immediately before the incident, Claimant got up off his seat to stand and allow his legs to act as shocks while he drove over the cracks. Claimant was informed by

his doctors that as a result of his skull fracture and other injuries, he would not have a memory of the incident.

Walter Guy, Claimant's brother, was riding his motorcycle approximately 50 yards behind Claimant in the left lane of westbound Route 20. He testified that he saw approximately two, three or four cracks that extended across the two westbound lanes of Route 20. The incident occurred where Claimant drove over the cracks. It appeared that his brother then hit a bigger bump that caused his bike to go up into the air, its handlebars shaking and Claimant going over the handlebars head first. Two photographs of the cracks were admitted into evidence. However, the record is unclear as to whether the photographs were taken two months or two years after the incident. No photograph of the bump was produced.

He testified that following the incident he went back to the scene to look at the bump. He placed his foot up against the bump and measured it as three inches in height. The bump was the same color as the pavement and extended across the westbound lanes.

Carlton Perry, a patrol officer with the Village of Bartlett testified that he was the investigating officer at the scene of the incident. Officer Perry determined that Claimant struck a raised expansion in the roadway which caused his accident. The raised expansion extended across the westbound lanes of Route 20. Officer Perry believed that rise in the pavement was approximately one and one-half inches. Officer Perry never measured the bump.

Approximately three days before Claimant's incident, Officer Perry was on a routine vehicle patrol in the area of the incident. Officer Perry's front tires struck something in the roadway which caused him to turn around and examine the road. Officer Perry noted there was an

expansion joint raised up approximately one to one and one-half inches above the surface of the roadway. The officer felt this was a dangerous condition so he contacted his dispatcher and advised the dispatcher to contact the State Highway Department about the condition. Officer Perry believes the Claimant struck this rise. Officer Perry has no knowledge whether the dispatcher ever contacted the State Highway Department.

Gerald Zielinski who was a team section technician in St. Charles for the Illinois Department of Transportation testified that in January 1988, he received a memorandum asking him to investigate the scene where the Claimant sustained his injuries. Zielinski never before received an inquiry for this location. The memorandum was admitted into evidence and contained hand-written responses from Zielinski.

"Q.(1)     Were we aware of pothole or any other type of roadway hazard at the above location prior to the date and time of this accident?

Response:  No, not immediately prior. There was a bump where the Bit. (Bituminous) surface and concrete surface meet, but this was burned and planed off previously that year.

Q.(4)      If this is the facility's first notification of this defect, please make a field inspection and advise us of your findings.

Response:  Area inspected on 1-21-88 – No Defect Found.

Q.(5)      Is the roadway in question inspected on a routine basis? If so, please advise when the roadway was last inspected prior to the date and time of this incident.

Response:  Roadways are inspected in the Spring and then (3) times a year by the Mowing Crew – any major defects noted are then repaired or scheduled for repair."

With respect to question (1), Zielinski believes the term "not immediately prior" probably means not within the last couple of months. Zielinski testified that a burning and planing of that area occurred in 1982 or 1983 and a planing occurred again either before Claimant's incident or after the incident. Burning to cure defects was

the process in 1982-1983, however, planing procedures were used in 1987 to correct bumps.

Although no actual records were located by Zielinski (they may have been thrown away), he does recall a call coming in to the communication center regarding a bump on Route 20 prior to January 22, 1988. However, there was no testimony as to when the call came in, what was done or where the bump was actually located. Zielinski also testified that the second repair may have been part of general maintenance over an area from Naperville Road to Bluff City Boulevard. Approximately 30 areas were shaved at that time.

The Respondent provided testimony of Dror Kopernik, an expert witness from Triodyne Consulting Engineers. Kopernik's testimony and video tapes he produced were the subject of motions to bar and motions in limine. Claimant's counsel contends that Kopernik testified at his deposition that all of his opinions with respect to this matter were based on the assumption that Claimant struck a depression below the road surface. Then, less than 60 days before trial, the Respondent provided amended answers to interrogatories indicating that Kopernik changed his opinions. The Claimant claims the Respondent violated Ill. Sup. Ct. Rule 213 and has now prejudiced the Claimant.

The Respondent contended that their expert did not change his mind or testimony. They contend that Kopernik testified in his deposition as to Claimant striking both holes and bumps. Further, at the deposition the witness produced video tapes about the effects of motorcycles driving over raised bumps. In addition, the Respondent claims that Kopernik's opinions have not changed since his deposition.

While both Claimant and Respondent were provided leave to submit briefs on the issues, no briefs were filed with the Court.

The tapes Claimant seeks to bar provide images of an individual driving a motorcycle over pieces of wood of varying size. Claimant asserts that one tape was made after Kopernik's deposition. Neither tape involves the same type of motorcycle driven by Claimant, the same road surface or the same type of stationary bump encountered by Claimant.

While the tapes do not actually depict the identical conditions or type of bump, the tapes do not prejudice Claimant. The probative value of the tapes exceed any alleged prejudice to the Claimant. No evidence was brought by the Claimant that a movable bump (piece of wood) would show different effects to a motorcycle as opposed to a stationary bump. In addition, no evidence was brought by the Claimant to establish different effects from different motorcycles. The tapes are admitted into evidence, as is the testimony of Kopernik.

Dror Kopernik testified that how a motorcycle reacts to a bump depends on the relationship between the diameter of the wheel and the bump driven over and the condition of the motorcycle. The larger the tire size, the easier it is to drive over certain size bumps.

The witness tested motorcycles going over different size bumps. While you feel the bump when you ride over it, there is little interference with the handlebars. Kopernik stated that the results did not depend on whether the tests were done in a parking lot or a highway, or if on concrete or asphalt, or if the bump was affixed or not, or on the model or brand of motorcycle tested. The one and one-half inch bump should not have any adverse effect on

a motorcycle. Although a three-inch bump is felt more by a rider, it should also not adversely affect the motorcycle.

The witness concluded that the alleged bump did not cause Claimant's accident. Unexplainable vibrations threw the Claimant off his motorcycle. The fact that the Claimant braced himself by standing on his pegs and raised off his seat so he would absorb the shock supports the witness' conclusion that the bump should not affect the control of the motorcycle.

The Respondent is not an insurer of all persons traveling on its highways. (*Toliver v. State* (1994), 47 Ill. Ct. Cl. 55, 59.) However, where a dangerous condition on a State highway exists, and a person using the highway suffers an accident involving the condition, that person must prove, by a preponderance of the evidence, that such dangerous condition existed and that the Respondent had actual or constructive notice. *Id.* The Claimant also must prove that the Respondent's negligence was the proximate cause of the injury, and that the Claimant was in the exercise of due care and caution for his own safety. *Graves v. State* (1983), 36 Ill. Ct. Cl. 76, 78.

For a finding of negligence, there must be a duty on the part of the Respondent. It is the duty of the Respondent to exercise reasonable care in the maintenance and care of its highways in order that defective and dangerous conditions likely to injure persons lawfully on the highways shall not exist. (*Allen v. State* (1984), 36 Ill. Ct. Cl. 242.) The exercise of reasonable care requires the Respondent to keep its highways reasonably safe. (*Allen*, 36 Ill. Ct. Cl. at 244.) If the highways are in a dangerously defective condition and therefore not reasonably safe and the Respondent is on notice of such condition, the Respondent is negligent if it does not notify or warn the public of such condition. *Id.* "The Court has never held

that all State roads must be bump free. To hold that they must, would be to make the State an insurer." *Id.*

Claimant has failed to establish that the Respondent had actual or constructive notice of the alleged defect. The fact that Officer Perry noticed a one to one and one-half inch rise in the pavement approximately three days before Claimant's incident, as opposed to Walter Guy's testimony of a three-inch bump, fails to show actual or constructive notice. No evidence was presented that the alleged defect was actually reported to the Respondent. The evidence shows that repair work was performed in 1982 or 1983 and again sometime within a year before the occurrence. However, the second repair may have been pursuant to a general maintenance schedule for that area. The evidence shows that the affected area was repaired within a year before the incident, and the record fails to establish that any actual notice was given to the Respondent thereafter of any defect. The evidence presented does not support a finding of constructive notice. Because we find that the Respondent did not have notice of the defect, it is not necessary to determine whether the defect actually existed.

Claimant has failed to meet his burden as to proximate cause. The Claimant's failure to establish either actual or constructive notice of a dangerous condition precludes recovery in this matter.

It is therefore ordered, adjudged and decreed that this claim is dismissed and forever barred.